PELLEGRINO RIPPUCCI *vs.* COMMONWEALTH CONSTRUCTION
COMPANY.

Suffolk.    December 12, 1905. — March 1, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Elevator. Negligence,* Employer's liability.

R. L. c. 104, § 27, requiring certain safety devices for elevators whether used for
freight or passengers does not apply to a temporary elevator erected and main-
tained by a contractor for transporting materials used in the construction of a
building.

TORT by a workman against his employer, a corporation en-
gaged in erecting a building ten stories in height called the Old
South Building on Washington Street in Boston, for personal
injuries from the fall of an elevator while the plaintiff was upon
it. Writ in the Municipal Court of the City of Boston dated
July 3, 1903.

On appeal to the Superior Court, at the trial before *Bell,* J. it
appeared that the elevator was used only in transporting mate-
rials used in the construction of the building, and that the ele-
vator was not equipped with any safety appliances.

The defendant asked the judge to rule : 1, That on all the
evidence the plaintiff cannot recover, 2, that the provisions of
R. L. c. 104, § 27, do not apply to this case, and, 3, that, if the
jury find that the presence of a safety device would not have pre-
vented the elevator from falling, the plaintiff cannot recover.

The judge refused to make these rulings, and ruled that the ele-
vator was within the provisions of R. L. c. 104, § 27. He ruled
that there was no evidence for the jury of negligence of the
superintendent, or that the machinery was defective or out of
repair except the absence of the safety appliances of the eleva-
tor, and so charged the jury. He left to the jury the question
whether the want of safety appliances upon the elevator was
negligence on the part of the defendant, and if so whether it
contributed to the plaintiff's injury.

The jury returned a verdict for the plaintiff in the sum of
$1,200 ; and the judge reported the case for determination by this
court. If his rulings and refusals to rule were correct, judgment

was to be entered upon the verdict.    If his ruling as to the application of R. L. c. 104, § 27, to this elevator was incorrect, and that law does not apply, a new trial was to be granted.

*C. Hunneman,* for the defendant.

*M. H. Browne, (J. M. Browne* with him,) for the plaintiff.

HAMMOND, J.    This was an action of tort brought by a servant against his master to recover for injuries received by reason of the fall of an elevator while the plaintiff was upon it.    The defendant was a contractor engaged in the construction of a building ten stories in height.    In the work of construction it put in the uncompleted building two elevators, which were side by side in an open shaft at the corners of which there were standing upright timbers.    They were simply platforms, and were raised and lowered by a steel cable which ran over a sheave at the tenth story and thence back to an engine in the basement.    They were controlled by bells at the engine, of different tones for the different elevators.    These bells were struck by "touch buttons" at each story.    So far as appears, the elevators were used only for transporting materials used in the construction of the building.    We understand that these elevators were not a part of the building as ultimately to be constructed, but were simply contrivances temporarily used in its construction.

The principal question is whether the provisions of R. L. c. 104, § 27, are applicable to elevators temporarily maintained by builders for the transportation of materials used in the construction of the building in which the elevator is set up.    The section, which is somewhat long, reads as follows : " Elevator cabs or cars, whether used for freight or passengers, shall be provided with a suitable mechanical device by which they will be securely held in the event of an accident to the shipper rope or hoisting machinery, or any similar accident, and they shall be guarded and equipped with some attachment or device fastened to the elevator cab or car, elevator well, or floor of the building, which shall prevent any person from being caught between the floor of the cab or car and the floor of the building while attempting to enter or leave the elevator.    Elevators used for carrying freight shall be equipped with a suitable device which shall act as a danger signal to warn people of the approach of the elevator.

Elevator wells hereafter built shall be so constructed that that part of the inside surface of the well which comes in front of the opening or door of the cab or car shall be flush with the cab or car, and the door opening from said elevator well into the building shall be placed not more than two inches back from the face of said well, so as to allow no space for a foothold between the car and well door of the building. All the above construction work and devices shall be approved by the inspectors of factories and public buildings, except that in the city of Boston they shall be approved by the building commissioner, and in other cities by the inspector of buildings; but, upon the approval of said commissioner, or inspector of buildings, or inspector of factories and public buildings, any elevator may be used without any or all of such appliances or devices if the nature of the business is such that the necessity for the same will not warrant the expense."

It becomes necessary to look to some extent into the history of the legislation on this subject. St. 1877, c. 214, § 2, is as follows:

" In any manufacturing establishment in which there shall exist or be placed any hoistway, hatchway, elevator or well-hole, the openings thereof through and upon each floor of such establishment shall be provided with and protected by good and sufficient trap-doors, or self closing hatches and safety-catches, or such other safeguards as the inspectors hereinafter mentioned shall direct; and all due diligence shall be used to keep such trap-doors closed at all times, except when in actual use by the occupant or occupants of the building having the use and control of the same."

This section appears in a statute entitled " An Act relating to the inspection of factories and public buildings." The language of this section, taken in connection with the purpose and scope of the whole statute, shows that the section was not intended to apply to a " hoistway, hatchway, elevator or well-hole " which was temporarily maintained simply as one of the contrivances used in the construction of a building. The section is plainly dealing with a building ready for occupancy, and not with such conditions as may temporarily arise in its construction.

This section is inserted in substance in Pub. Sts. c. 104, § 14.

Here also it is found in a statute entitled " Of the inspection of buildings " ; and, for reasons similar to those above alluded to, it is plain that the section has no wider application than before. By St. 1882, c. 208, the section was amended by extending its applicability to any " mercantile or public building," and by adding to the end the following: " All elevator cabs or cars, whether used for freight or passengers, shall be provided with some suitable mechanical device, to be approved by the said inspectors, whereby the cabs or cars will be securely held in the event of accident to the shipper rope, or hoisting machinery, or from any similar cause." Although the language of this amendment seems broad enough to cover any kind of elevator, whether the same be a part of the building as constructed for use or be only one of the rough mechanical contrivances temporarily used in the construction, yet we think that the section as thus amended does not refer any more than it did before to the latter class of elevators. As before the amendment, so afterwards it must be held to apply only to the former class. The statute is still dealing with a building as such, and not with implements and contrivances temporarily used in its construction.

The building laws were codified in St. 1894, c. 481, and the provisions of Pub. Sts. c. 104, § 14, as amended by St. 1882, c. 208, were then placed in two sections (§§ 41, 42), the first of which (§ 41) contained the provision relating to " hoistways, hatchways, elevators and well holes," and the second (§ 42) related to elevator cabs or cars, and was substantially the same as the amendment which was placed at the end of Pub. Sts. c. 104, § 14, by St. 1882, c. 208. There is nothing in this codification showing any intention on the part of the Legislature to extend the scope of the provisions under consideration. St. 1894, c. 481, § 42, was finally amended by St. 1901, c. 439, so as to be substantially the same as R. L. c. 104, § 27, which is the section in question.

It will be observed that this last is a part of a system devised for the inspection of buildings as were the various similar sections preceding it. The whole statute of which it is a part plainly is dealing with the features of a building as such, and many of its sections cannot refer to a building in process of con-

struction. For instance, take § 25 as to fire escapes. And the provisions contained in the section under consideration with reference to the inside surface of an elevator well manifestly are not intended to apply to a skeleton structure like the one which may be used as part of the ways and means of construction.

Taking into consideration the history of this kind of legislation and the language and setting of the section, we are of opinion that it does not apply to an elevator temporarily used as a part of the ways, works and machinery in the construction of a building. We find no case in our own reports where there has been a claim for injuries received upon such an elevator. In every case the elevator has been a part of the building as such. The ruling that the provisions of this section applied to this elevator was wrong. By the terms of the reservation therefore, a

*New trial is granted.*